OPINION
{¶ 1} Plaintiff-appellant, Ardythe S. Hackman, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, granting her a divorce from defendant-appellee, Albert H. Hackman, III. For the following reasons, we reverse and remand.
 {¶ 2} Ardythe and Albert married on June 25, 1983. The couple had one child, who is now an emancipated adult. On July 21, 2004, Ardythe filed a complaint for divorce against Albert. *Page 2 
 {¶ 3} While the divorce action was pending, the magistrate entered a temporary order of support pursuant to Civ. R. 75(N). In that order, the trial court required Albert to: (1) pay Ardythe $2,200 per month in temporary spousal support; (2) maintain Ardythe's health insurance; (3) pay the mortgages, taxes, insurance, and utility bills for the marital residence; (4) pay all Ardythe's medical expenses not covered by insurance and all Ardythe's prescription co-pays; and (5) make the loan and insurance payments for Ardythe's car.
 {¶ 4} On the same day that Ardythe filed for divorce, the magistrate issued a restraining order prohibiting Albert from depleting any marital property, including any of the couple's financial accounts. On October 13, 2005, the magistrate issued an agreed order that temporarily lifted the restraining order to allow Albert to withdraw money from his SEP-IRA. The agreed order specified that, of the money withdrawn, Albert would give Ardythe $13,000 to pay her attorneys and forensic accountant and $3,156.97 to pay some of her outstanding medical bills. Albert could keep $10,000 for his own uses. The agreed order characterized $13,156.97[1] of the withdrawal as a partial distribution of marital property to Albert, and it required Albert to pay all taxes associated with withdrawing that sum. However, the agreed order did not indicate how the parties would treat the $13,000 that Ardythe would receive to pay her attorneys and accountant. Instead, the agreed order assigned the trial court the responsibility to determine whether the $13,000 would be designated as a partial property distribution to Ardythe, part of Ardythe's spousal support, or part of an award of attorney fees and litigation expenses to *Page 3 
Ardythe. Additionally, the agreed order stated that the trial court would also identify the party responsible for the payment of the taxes on the $13,000 withdrawal.
 {¶ 5} In accordance with the agreed order, on November 3, 2005, Albert withdrew $33,000 from his SEP-IRA. He received only $26,400, as the administrator withheld 20 percent of the total sum for payment of federal income tax. Although Ardythe claims that she never received the entire $3,156.97 to pay her medical bills, no one disputes that Albert gave Ardythe $13,000 to pay her attorneys and accountant.
 {¶ 6} On February 13, 2006, Albert again withdrew money from his SEP-IRA. On this occasion, however, Albert did not first obtain an order lifting the restraining order that prohibited him from depleting marital property. Albert withdrew a total of $11,500, which he later claimed he used to pay taxes and marital debt.
 {¶ 7} After a trial, the trial court issued a judgment entry-decree of divorce in which the court awarded Ardythe $2,900 per month in spousal support and ordered Albert to pay for Ardythe's COBRA-based health insurance for 36 months. The trial court also divided the parties' marital property, including Albert's SEP-IRA. Ardythe now appeals from that judgment and assigns the following errors:
 [1.] THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION WITH RESPECT TO THE AMOUNT OF SPOUSAL SUPPORT ORDERED EFFECTIVE MAY 3, 2007 AND IN FAILING TO CONSIDER THE APPELLANT'S HEALTH INSURANCE AND APPELLANT'S MONTHLY UNCOVERED MEDICAL EXPENSES AVERAGING OVER $650.00 PER MONTH.
 [2.] THE TRIAL COURT COMMITTED REVERSIBLE ERROR AS ITS ORDERS WERE MADE EFFECTIVE MAY 3, 2007 AS THEY RELATE TO THE PARTIES' MARITAL RESIDENCE AND ARE VAGUE AND UNENFORCEABLE. *Page 4 
 [3.] THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION BY FAILING TO ACCOUNT FOR THE TOTAL AMOUNT OF RETIREMENT BENEFITS AVAILABLE FOR ALLOCATION AS PART OF THE PROPERTY DISTRIBUTION IN VIOLATION OF OHIO REVISED CODE § 3105.171.
 {¶ 8} By her first assignment of error, Ardythe argues that the trial court abused its discretion in determining that $2,900 per month was a reasonable, equitable, and appropriate award of spousal support. We agree.
 {¶ 9} A trial court may determine spousal support is appropriate and reasonable, and it may set the nature, amount, and terms of payment, as well as the duration of the support, only after considering:
 (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
 (b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties;
 (d) The retirement benefits of the parties;
 (e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because that party will be a custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
 (h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties; *Page 5 
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.
R.C. 3105.18(C)(1)(a)-(n). The trial court must consider all of these factors; it may not base its decision regarding spousal support on any one factor in isolation. Kaechele v. Kaechele (1988), 35 Ohio St.3d 93,96. An appellate court will not reverse a trial court's determination as to spousal support absent an abuse of discretion. Havanec v.Havanec, Franklin App. No. 08AP-465, 2008-Ohio-6966, at ¶ 23.
 {¶ 10} In determining whether to award spousal support to Ardythe, the trial court found that Ardythe has no current employment or income and, given Ardythe's poor health, she is unemployable. The trial court also found that Ardythe's monthly expenses total $2,813.70. Turning to Albert, the trial court determined that Albert earns $136,500 per year as a pediatric dentist and enjoys significant borrowing power with Commerce National Bank. The trial court calculated Albert's monthly expenses at $5,318.57 (including $2,900 in spousal support). Additionally, the trial court determined that the parties had an "above-average" lifestyle during the marriage, and it characterized the *Page 6 
parties' marriage as "long term." Finally, the trial court found that both parties have Social Security benefits; the current value of Ardythe's benefits is $27,517 and the current value of Albert's benefits is $109,267. Based upon these findings, the trial court awarded Ardythe $2,900 per month in spousal support.
 {¶ 11} First, Ardythe argues that the trial court abused its discretion in fixing the support amount at $2,900 per month because the Civ. R. 75(N) temporary order required Albert to pay in excess of $6,000 a month for spousal support and Ardythe's expenses.[2] We find this argument unavailing. Nothing in R.C. 3105.18(C) requires the trial court to consider, much less match, the amount of temporary support when setting the amount of post-decree spousal support.
 {¶ 12} Second, Ardythe argues that the trial court erred in not considering the monthly cost she incurs for prescription and medical expenses not covered by her insurance. Although R.C. 3105.18(C) does not require a trial court to consider living expenses in determining spousal support, a trial court, in its discretion, may include living expenses in its spousal support analysis. Dunham v. Dunham, 171 Ohio App.3d 147,2007-Ohio-1167, at ¶ 76. Here, the trial court decided to consider each party's living expenses in arriving at the appropriate amount of spousal support. Thus, we will review whether the trial court abused its discretion in its calculation of those expenses. *Page 7 
 {¶ 13} Contrary to Ardythe's argument, the trial court did not ignore her uncovered medical-related expenses in tallying her monthly expenses. The trial court found that Ardythe spends $60 a month for physician co-pays, $60 a month for counseling/mental health, and $133 a month for her prescriptions. The trial court arrived at these figures based upon the evidence that Ardythe provided at trial; namely, exhibit No. 1, entitled "Monthly Living Expenses of Ardythe Hackman." On appeal, Ardythe now claims that her out-of-pocket health-related expenses total $650 a month. In support of this claim, she relies solely upon exhibit No. 37, a mishmash of documents that includes letters from Ardythe's attorney to Albert demanding payment for expenses that Ardythe incurred during the divorce proceedings; bills from physicians, Time Warner, Cingular Wireless, and others; and prescription receipts. Frankly, we cannot divine how Ardythe concluded from these documents that she spends $650 a month on uncovered health-related expenses. Moreover, the trial transcript does not provide us with any assistance, as Ardythe never testified to the $650 figure. Therefore, we conclude that the trial court did not abuse its discretion in calculating Ardythe's monthly out-of-pocket health-related expenses.
 {¶ 14} Third, Ardythe argues that the trial court erred in attributing to her a yearly income of $14,004.10 from interest accruing from the investment of her half of Albert's dental practices. After awarding Ardythe $280,082, half of the value of her husband's dental practices, the trial court stated, "[t]his award will undoubtedly earn interest at or near 5%, yielding income to the Plaintiff in the approximate yearly amount of $14,004.10." (J. Entry-Decree of Divorce, at 12.) No evidence supports this finding. However, the trial court premised its consideration of the tax consequences of the spousal support award *Page 8 
upon its imputation of $14,004.10 in yearly income to Ardythe. The trial court held that Albert could deduct from his taxes any spousal support paid and that Ardythe must include any spousal support received as income on her taxes. The trial court then stated that, "[t]he tax responsibilities of the Plaintiff are addressed by the earnings on her property awards." (J. Entry-Decree of Divorce, at 14.) Apparently, the trial court believed that earnings from the investment of the property awards, which consisted almost entirely of the award of $280,082 for half of the dental practices, would offset the portion of spousal support lost to taxes. Because any interest earnings are unproven and completely hypothetical, the trial court abused its discretion in incorporating that nonexistent income in its consideration of the tax consequences factor.
 {¶ 15} Finally, Ardythe argues that the trial court erred in failing to consider the increase in expenses she will encounter when her current health insurance expires and she must pay for her own health insurance. During trial, Ardythe presented the testimony of Larry France, an insurance salesperson. France testified that under COBRA, Ardythe can continue to receive health insurance through the group health plan sponsored by her husband's employer for up to 36 months after the divorce. Thereafter, Ardythe will have to purchase her own insurance. However, Ardythe's poor health limits her health-insurance options to either enrollment in an HMO or the purchase a HIPAA-compliant individual policy. France estimated that, at current rates, HMO coverage would cost Ardythe $1,200 to $1,600 per month and HIPAA-compliant coverage would cost $700 to $1,000 per month. France also stated that, generally, the cost of both forms of health insurance rises ten percent per year. *Page 9 
 {¶ 16} Although the trial court ordered Albert to pay for Ardythe's COBRA-based coverage as long as legally allowable, the trial court made no provision for the cost of health insurance after the expiration of the COBRA-based coverage. As the trial court set May 3, 2007 as the date of the parties' divorce, Ardythe will have to purchase her own health insurance by May 2010 — 36 months after the date of the divorce. Given the likely cost of the health insurance in 2010, Ardythe faces the prospect of spending one-third to over one-half of her spousal support on health coverage. Ardythe is unemployable, so the spousal support will be Ardythe's major source of monthly income. Therefore, the trial court failed to address a looming, significant expense that will drastically affect Ardythe's ability to meet her monthly expenses and maintain a standard of living that reasonably relates to the standard that she enjoyed during the marriage. Because the cost of health insurance will consume such a large portion of Ardythe's income, thus substantially impacting her standard of living, we conclude that the trial court abused its discretion in not considering that cost when determining the amount of her spousal support. See Berthelot v. Berthelot,154 Ohio App.3d 101, 2003-Ohio-4519, at ¶ 47 (holding that equity requires that a spousal support award allow the recipient to maintain a "`standard of living, comparable to the standard maintained during the marriage'").
 {¶ 17} Albert, however, argues that the trial court did not err in failing to consider the future cost of Ardythe's health insurance because the issue is not yet ripe for review. Albert contends that Ardythe can move to modify the amount of her spousal support when she actually incurs the expense for health insurance coverage. We find that Albert's contention is incorrect. R.C. 3105.18(E) provides that a trial court may modify the amount or terms of a spousal support award if it "determines that the circumstances of either party *Page 10 
have changed." A change in circumstances justifying a modification of a spousal support award "must be material, not brought about purposefully by the moving party, and not contemplated at the time of the priororder." Friesen v. Friesen, Franklin App. No. 07AP-110, 2008-Ohio-952, at ¶ 39 (emphasis added). In the case at bar, Ardythe currently contemplates that she will have to pay a significant amount to obtain health insurance when her COBRA-based coverage lapses. Thus, incurring those payments will not constitute the change in circumstances necessary to allow a trial court to modify the amount of Ardythe's spousal support award.
 {¶ 18} In sum, the trial court erred in imputing hypothetical, unproven interest income to Ardythe and in failing to consider the significant cost Ardythe will incur to purchase health insurance after her current coverage lapses. Accordingly, we sustain Ardythe's first assignment of error.
 {¶ 19} By Ardythe's second assignment of error, she argues that the trial court erred in not providing enough detail with regard to the disposition of the marital residence. We disagree.
 {¶ 20} The trial court issued a decision setting forth its findings of fact and conclusions of law on February 27, 2008. In that decision, the trial court required the parties to sell the marital residence and equally divide the proceeds. It also provided that if the parties could not consummate a sale within 90 days of January 30, 2008, they would have to sell the residence by auction. Additionally, the trial court ordered Albert to continue to make the mortgage, tax, and insurance payments for the 90 days. On May 21, 2008, the trial court reduced the terms laid out in the decision to judgment. *Page 11 
 {¶ 21} Ardythe now argues that this order is vague and unenforceable because it fails to address: (1) which party must pay for the mortgage, taxes, and insurance from May 3, 2007 (the effective date of the divorce) to January 30, 2008, and (2) which party must pay for the mortgage, taxes, and insurance if the residence does not sell at auction. We are not persuaded by Ardythe's argument for three reasons. First, prior to January 30, 2008, the temporary order was in force, and it required Albert to pay the mortgage, taxes, and insurance on the residence. Thus, the trial court did not need to allocate responsibility for payment of those expenses for May 3, 2007 to January 30, 2008. Second, based upon the timeline presented, Ardythe could have presented the trial court with any questions raised by the possibility that the residence would not sell. The 90 days the trial court gave the parties to sell the residence elapsed on April 29, 2008 — almost a month prior to the entry of the judgment entry-decree of divorce. Thus, if (as Ardythe now alleges) the residence did not sell in those 90 days, the better practice called for seeking further instruction from the trial court instead of reserving her concerns for appeal. Finally, a trial court can never address every possible contingency that may arise in a judgment of divorce. To find otherwise would place an unreasonable burden on the trial court. Thus, we refuse to find that the trial court erred in failing to address a contingency that it did not foresee. Accordingly, we overrule Ardythe's second assignment of error.
 {¶ 22} By Ardythe's third assignment of error, she argues that the trial court abused its discretion when it did not divide the entirety of Albert's SEP-IRA. We agree.
 {¶ 23} R.C. 3105.171(C)(1) mandates that a trial court divide marital property equally, or if an equal division is inequitable, the court must divide the marital property *Page 12 
equitably. See Neville v. Neville, 99 Ohio St.3d 275, 2003-Ohio-3624, at ¶ 5. "Marital property" includes:
 (i) All real and personal property that currently is owned by either or both of the spouses * * * and that was acquired by either or both of the spouses during the marriage;
 (ii) All interest that either or both of the spouses currently has in any real or personal property * * * and that was acquired by either or both of the spouses during the marriage;
 (iii) * * * [A]ll income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage[.]
R.C. 3105.171(A)(3)(a)(i)-(iii) (emphasis added). Therefore, a trial court should value and divide all marital property in a divorce, and in the majority of cases, the failure to do so amounts to an abuse of discretion. Beagle v. Beagle, Franklin App. No. 07AP-494, 2008-Ohio-764, at ¶ 41 ("As a general rule, a trial court's failure to value the marital property constitutes an abuse of discretion."); Robinson v.Robinson (Dec. 3, 1999), Montgomery App. No. 17562 ("It is an abuse of discretion for a court to fail to divide marital property as required by R.C. 3105.171. * * * R.C. 3105.171 requires a trial court to equitably divide all marital assets.") (emphasis sic). See, also, R.E. v.K.E., Muskingum App. No. CT 2006-0037, 2007-Ohio-4750, at ¶ 44 (holding that the trial court erred in failing to divide the husband's 401(k) plan after finding that it was marital property); Ray v. Ray, Medina App. No. 03CA0026-M, 2003-Ohio-6323, at ¶ 15 (holding that the trial court abused its discretion when it valued the wife's interest in a race horse and found that the interest was marital property, but it did not divide that interest between the husband and wife).
 {¶ 24} In the case at bar, the trial court found that "[o]n September 30, 2006, the [SEP-IRA] account had a value of $87,625.00." (J. Entry-Decree of Divorce, at 10.) The *Page 13 
trial court then held that it would divide the account equally, after taking into consideration Albert's unauthorized $11,500 withdrawal. The trial court ordered that Ardythe receive $27,312.50 of the SEP-IRA and that Albert receive $15,812.50.
 {¶ 25} After a review of the record, we cannot fathom how the trial court arrived at any of its numbers. First, according to the July 1, 2006 to September 30, 2006 quarterly statement for the SEP-IRA, the value of the SEP-IRA on September 30, 2006 was $43,125.95 — not $87,625 as the trial court found. Moreover, documentary evidence reflects that the highest value the SEP-IRA ever obtained was $78,451.55 on September 30, 2005. Second, the trial court's division of the SEP-IRA only allocated $43,125 of the account between the parties. If, as the trial court found, the value of the SEP-IRA was $87,625, then the trial court did not apportion $44,500 of the value of the SEP-IRA. Presumably, $33,000 of the $44,500 not apportioned is the money that Albert withdrew from the SEP-IRA pursuant to the agreed order. Although the parties agreed that some of that money was a distribution of marital property to Albert, they left to the trial court the question of how the $13,000 paid to Ardythe's attorneys and accountant would be allocated. The judgment, however, does not mention the $33,000 withdrawal at all.
 {¶ 26} Consequently, we conclude that the trial court erred either in valuing the SEP-IRA or in failing to fully distribute the value of the SEP-IRA. Because Ardythe's third assignment of error incorporates the latter possibility, we sustain it.
 {¶ 27} For the foregoing reasons, we sustain Ardythe's first and third assignments of error, and we overrule Ardythe's second assignment of error. Accordingly, we reverse the judgment of the Franklin County Court of Common Pleas, Division of Domestic *Page 14 
Relations, and we remand this case to that court for further proceedings consistent with law and this opinion.
Judgment reversed and cause remanded.
FRENCH, P.J., and McGRATH, J., concur.
[1] This amount — $13,156.97 — is the sum of the $10,000 allocated to Albert and the $3,156.97 designated for the payment of Ardythe's medical expenses.
[2] As we stated above, the temporary order required Albert to pay spousal support; the mortgages, taxes, insurance, and utilities for the marital residence; the loan and insurance payments for Ardythe's car; and Ardythe's uncovered medical expenses. Excluding the medical expenses, Albert presented evidence at trial that he paid $5,539.48 per month under the terms of the temporary order. In her appellate brief, Ardythe increased this total by $650 to reflect the amount that she allegedly spends monthly on uncovered medical expenses. *Page 1